WILBUR G. HALLAUER *v.* UNITED STATES (No. 4711)[2]

---

[1] *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120; *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395.

[2] C. A. D. 518.

United States Court of Customs and Patent Appeals, March 11, 1953.

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

[Oral argument December 10, 1952, by Mr. Tuttle and Mr. Auster]

Before GARRETT, Chief Judge, and WORLEY, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal in a reappraisement proceeding from a judgment of the United States Customs Court, First Division, Appellate Term, Reap. Dec. 8045, in accordance with which the judgment of the single judge, Reap. Dec. 7804, was affirmed.

Twenty-five collectors' appeals for reappraisement, filed under section 501 of the Tariff Act of 1930, are involved and were consolidated for trial.

The merchandise consists of apples exported to Canada from Oroville, Washington, for the purpose of cleaning, grading, wrapping, and packing. The exportations occurred between November 8, 1947, and January 29, 1948. The goods returned are described as Jonathan and Red Delicious apples, packed in boxes of Canadian origin, each weighing 42 pounds net. In the invoice certain of the apples were described as "Grade C." They were entered and appraised at prices ranging from $1.50 to $2.00 per box. Other of the involved goods were described as "Combination fancy and extra fancy" apples and appraised from $2.50 to $3.75 per box. Those prices represent foreign value as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C., sec. 1402 (c)), and it is agreed there was no higher export value.

No testimony was submitted, but counsel for the parties agreed to the following stipulation of facts:

* * * The apples of American origin are exported to Canada, where they are wiped to remove insecticide spray residue, and then packed in boxes of Canadian origin, after which they were returned to the United States. The detailed operation in Canada was as follows: The apples were trucked to a plant in Canada from the United States in boxes each containing approximately 35 pounds of orchard run apples. The apples were covered more or less with an orchard spray residue. The apples were dumped at the wiping machine in Canada and passed between a series of revolving brushes and revolving rollers with rags on them. This wiping machine removed spray residue and also polished the apples. From the wiping machine the apples passed, with no additional handling, to the grading machine. The apples were conveyed on an endless belt between female

inspectors standing on both sides of the conveyor belt, who picked out the culls and various grades of apples. The grades were separated according to size mechanically and diverted to large containers from which the packers placed the apples in tissue wrappers and packed them into boxes. The boxes were removed to the warehouse, where the pack of each grower was stored separately. American labels sent to Canada were placed on the boxes. The apples before the court were returned to the United States in Canadian boxes. * * *

    \*        \*        \*        \*        \*        \*        \*

* * * the unit values as entered and appraised on the apples in the shipments before the court are the prices on the dates of exportation herein, at which such or similar apples were freely offered for sale for home consumption to all purchasers in the principal markets of Canada in the usual wholesale quantities in the ordinary course of trade, including the cost of all containers and coverings and all other costs, charges and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, and that the statutory export value is no higher.

Also upon agreement by counsel for the parties there was offered in evidence Exhibit 1 which sets out certain expenses incurred in Canada with respect to the involved merchandise, as follows:

| Dutiable Charges, Expenses, Etc. | Per 800 Boxes of 42 Lbs. Each (Canadian $) | Per Box of 42 Lbs. Each (Canadian $) | Equivalent to per bushel of 50 lbs. (Canadian $) |
|---|---|---|---|
| (1) Wiping_____ | 1. 60 | . 002 | . 00168 |
| (2) Transfer of fruit from boxes to wiping machines_____ | 2. 40 | . 003 | . 00252 |
| (3) Sorting after completion of wiping_____ | 72. 00 | . 09 | . 0756 |
| (4) (a) Canadian liners & pads_ | 20. 00 | . 025 | . 021 |
| (b) American wrappers__ | (56. 00) | | |
| | 36. 00 | . 045 | . 0378 |
| (5) Wrapping and packing in boxes for shipment____ | 210. 80 | . 2635 | . 22134 |
| (6) Canadian packing boxes___ | 233. 20 | . 2915 | (. 24486) |
| (7) Labels (of U. S. origin)____ | 4. 00 | . 005 | . 0042 |
| (8) Miscellaneous expenses____ | 20. 00 | . 025 | . 021 |
| | 600. 00 | . 75 | . 63 |

It was further agreed that the amounts listed in the exhibit were not charged extra in the home market or for export over and above the prices freely offered per bushel or per box of apples after they were processed and wrapped; that item 4 (b) consisted of American wrappers returned to the United States; that item 7 consisted of labels of American origin which were also returned to this country; that item 5 reflected cost of the labor involved in wrapping and packing for shipment to points in Canada or in the United States; that the same charges were applicable to the home and export markets; and that the Canadian boxes specified in item 6 were the usual containers of apples.

While the importer did not question the unit values found by the appraiser, he did contend that the values so found should be segregated in such a manner that the value of the apples *per se* and the value of the alterations might be available to the collector for the purpose of assessment of duty, urging that only items 1 and 2, above set out, should be considered in computing duty on the returned merchandise.

The Government contended that the unit appraised value of the involved merchandise included all of the costs incident to placing the apples in their packed condition, pursuant to the statutory value under section 402 (c) of the Tariff Act of 1930, *infra*, and that included in such foreign value were costs of the alterations performed in Canada upon the American goods which, as provided for in paragraph 1615 (g), *infra*, should, as was done by the courts below, be segregated from the total cost and returned separately.

The single judge found the unit of value to be a 42 pound box of apples and held that all of the items listed in Exhibit 1 (except item 8) constituted "the value of the alterations made in Canada" noting, however, that the items of American wrappers and labels of United States origin presumably would be conditionally nondutiable under paragraph 1615 (h), *infra*, of the Tariff Act of 1930.

Upon appeal, the appellate division observed that "The issue concerns the work done in Canada, the sole question being which, if any, of the items, hereinafter set forth, constitute alterations made in the country of exportation." That is the only issue here, as the disposition of item 8 is not in dispute.

The pertinent parts of the statutes here involved are as follows:

SEC. 402. VALUE.

\*     \*     \*     \*     \*     \*     \*

(c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

SEC. 500. DUTIES OF APPRAISING OFFICERS.

(a) Appraiser.—It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary not withstanding:

\*     \*     \*     \*     \*     \*     \*

Par. 1615 (g). Any article exported from the United States for repairs or *alterations* [1] may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph. (Italics ours.)

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

While it is literally true, as contended by the importer, that apples went out and apples came back, the undisputed facts show that the articles exported to Canada were ungraded apples covered with a film of insecticide spray residue and transported in boxes of an approximate capacity of 35 pounds, whereas the apples returned were wiped, polished, graded, wrapped, and packed in boxes of Canadian origin each weighing 42 pounds net. We share the view of the court below that those changes were sufficient to convert the exported merchandise from "an apple" or "apples" *per se*, as they were alleged to be by the appellant, into a different unit of merchandise or article of trade and constituted "alterations" within the meaning of paragraph 1615 (g), *supra*, the value thereof being represented by items 1 to 7, inclusive.

The importer also contends that paragraph 734 of the Tariff Act of 1930, providing for a specific duty on apples, should be authority for disregarding the cost of the containers in which the apples were returned. That paragraph reads as follows:

Par. 734. Apples, green or ripe, 25 cents per bushel of fifty pounds; dried, desiccated, or evaporated, 2 cents per pound; otherwise prepared or preserved, and not specially provided for, 2½ cents per pound.

We believe, however, Congress intended that paragraph to apply only to those articles of foreign origin imported into this country, and not to articles of American origin shipped out and subsequently returned, which articles are specifically provided for in paragraph 1615 (g), *supra*.

It is our opinion that a fair interpretation and application of the involved statutes properly lead to the conclusion that the court below was not in error in treating the involved merchandise as it did.

For the reasons set forth above, the judgment of the appellate division of the United States Customs Court is hereby *affirmed*.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.

---

[1] Webster's New International Dictionary, Second Edition, defines the words "alter" and "alterations," respectively, as follows:

alter. * * * 1. To change in one or more respects, but not entirely; to make (a thing) different without changing it into something else; to vary; to modify; sometimes, to change in any way. * * *

alteration. 1. Act of altering, or state of being altered. 2. The result of altering; a modification or change made in altering anything; * * *